IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

COYLE TRUCKING, INC.     :
             :  CIVIL ACTION
   v.         :
             :  19-3164
APPLIED UNDERWRITERS, INC., ET AL. :

**MEMORANDUM**

**SURRICK, J.**               **MAY 20, 2022**

   Presently before the Court is Defendants' Motion to Transfer Venue or Alternatively Dismiss the First Amended Complaint (ECF No. 7).  Though there are several Defendants in this case, some with similar names, only one Defendant was a party to the agreement with Plaintiff that is now at issue.  Defendants jointly request that we enforce the agreement's forum selection clause.  For the following reasons, the forum selection clause will be enforced against all parties, and Defendants' request to transfer the claims to the District of Nebraska will be granted.[1]

## I.  BACKGROUND

   This dispute concerns a workers' compensation insurance plan between Plaintiff Coyle Trucking and Defendants.  Plaintiff participated in a workers' compensation insurance program issued by Defendant Continental Indemnity Company ("Continental").  (Am. Compl. ¶ 14, ECF No. 6.)  Defendants Applied Underwriters Captive Risk Assurance Company, Inc. ("AUCRA"), Applied Risk Services, Inc. ("ARS"), and Continental are corporations that each have no employees, are subsidiaries of Defendant Applied Underwriters, Inc. ("Applied"), and are corporate affiliates of each other.  (*Id.* ¶ 16-18.)  Plaintiff is a Pennsylvania corporation with a

---

[1] Since the case will be transferred to the District of Nebraska, this Court need not address Defendants' motion to dismiss individual counts of the Complaint.

principal place of business in Pennsylvania; Applied is a Nebraska corporation; AUCRA is an Iowa corporation and has a principal place of business in Nebraska, although it was previously incorporated under the laws of the British Virgin Islands at the times relevant to the dispute; Continental is an Iowa corporation with a principal place of business in Nebraska; and ARS is a Nebraska corporation with an office in Nebraska.  (*Id.* ¶ 14-18.)  Plaintiff alleges that all actions taken by AUCRA, Continental, and ARS were actually performed by Applied employees.  (*Id.* ¶ 16-18.)

In general, workers' compensation insurers provide employers with either guaranteed cost policies, which have fixed premiums regardless of the claims made, or retrospective rating plans, which have fluctuating premiums (within a predetermined minimum and maximum range) based on the claims made.  (*Id.* ¶ 21.)  Plaintiff alleges that Defendants mislead Plaintiff as to the nature of the programs and insurance rates it purchased when Continental sold Plaintiff its EquityComp workers' compensation insurance program, which was a retrospective rating plan under the guise of a guaranteed cost policy.  (*Id.* ¶ 25, 28.)  Specifically, Plaintiff complains that Defendants represented that employers would never have to pay more than a certain amount for full insurance coverage regardless of the actual loss incurred by their employees and could be eligible to pay a retrospectively reduced rate if the actual loss incurred by their employees was less than initial projections.  (*Id.* ¶ 5.)

Plaintiff asserts that Defendants intentionally circumvented Pennsylvania administrative regulations—which require the Pennsylvania Insurance Commissioner to approve insurance policies—by filing a guaranteed cost policy with the Commissioner but using two unfiled agreements to create a retrospective rating plan.  (*Id.* ¶ 26.)  According to Plaintiff, these unfiled agreements were (1) "a so-called reinsurance treaty between [Continental] and [AUCRA]" and

(2) a "Reinsurance Participation Agreement ("RPA") to convert the workers' compensation insurance into [a retrospective rating plan]." (*Id.*)  The RPA, which was between only AUCRA and Plaintiff, contained a forum selection clause stating the following:

> ANY LEGAL SUIT, ACTION OR PROCEEDING ARISING OUT OF, RELATED TO OR BASED UPON THIS AGREEMENT, OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY MUST ONLY BE INSTITUTED IN THE FEDERAL COURTS OF THE UNITED STATES OF AMERICA OR THE COURTS OF THE STATE OF NEBRASKA, IN EACH CASE LOCATED IN OMAHA AND THE COUNTY OF DOUGLAS, AND EACH PARTY IRREVOCABLY SUBMITS TO THE EXCLUSIVE JURISDICTION OF SUCH COURTS IN ANY SUCH SUIT, ACTION OR PROCEEDING…. THE PARTIES IRREVOCABLY AND UNCONDITION-ALLY WAIVE ANY OBJECT[ION ]TO THE LAYING OF VENUE OF ANY SUIT, ACTION OR ANY PROCEEDING IN SUCH COURTS AND IRREVOCABLY WAIVE AND AGREE NOT TO PLEAD OR CLAIM IN ANY SUCH COURT THAT ANY SUCH SUIT, ACTION OR PROCEEDING BROUGHT IN ANY SUCH COURT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM.

(Pl.'s Mem. of Law, 8, ECF No. 9) (quoting RPA ¶ 13(B)).  The RPA was not filed with the Commissioner.  (Am. Compl. ¶ 32-37.)  Plaintiff requests rescission, restitution, and damages for common law fraud and violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (73 Pa. Stat. §§ 201-1, *et seq.*).  (*Id.* ¶ 1.)

On June 8, 2018, Plaintiff filed a class action suit against Defendants in the District of Nebraska for violations of Nebraska law and common law claims for essentially the same conduct described in the complaint in the instant matter.  *Coyle Trucking, Inc. v. Applied Underwriters, Inc., et al.*, No. 18-258.  Defendants filed a motion to dismiss the matter as duplicative of another class action filed in the District of Nebraska, *Applied Underwriters v. Top's Personnel, Inc.*, No. 15-90, which the court denied as premature on November 1, 2018. After the judge presiding over the class action matter denied the request for class certification, *Top's*, No. 15-90, Plaintiff filed a notice of voluntary dismissal of its pending matter without

prejudice pursuant to Fed R. Civ. P. 41(a)(1)(A)(i) on March 21, 2019.  On June 4, 2019,

Plaintiff filed the complaint in the instant case in the Court of Common Pleas in Philadelphia,

which was subsequently removed to the United States Court in the Eastern District of

Pennsylvania.  (*See* Compl., ECF No. 1.)

## I.    LEGAL STANDARD

Federal law states that "[f]or the convenience of parties and witnesses, in the interest of

justice, a district court may transfer any civil action to any other district or division where it

might have been brought or to any district or division to which all parties have consented."  28

U.S.C. § 1404(a).  The Third Circuit has established a four-step test for determining whether to

transfer a case for the parties' convenience where the forum selection clause does not bind all

parties to a case.  Courts must consider four steps in the following order: "(1) the forum-selection

clauses, (2) the private and public interests relevant to non-contracting parties, (3) threshold

issues related to severance, and (4) which transfer decision most promotes efficiency while

minimizing prejudice to non-contracting parties' private interests."  *In re: Howmedica Osteonics

Corp*, 867 F.3d 390, 403-04 (3d Cir. 2017).

In assessing Step One—the forum selection clause—courts determine whether the forum

selection clause between the contracting parties is enforceable and if enforcement of the clause

would be contrary to the public interest or the contracting parties' interests.  Forum selection

clauses are "prima facie valid" and should be enforced unless shown to be "unreasonable under

the circumstances."  *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972); *see Foster v.

Chesapeake Ins. Co.,* 933 F.2d 1207, 1219 (3d Cir. 1991).  Courts hold that "[a] contractual

choice-of-forum clause should be held unenforceable if enforcement would contravene a strong

public policy of the forum in which suit is brought, whether declared by statute or by judicial

decision." *Id.* at 15.  The party opposing a forum selection clause bears the heavy burden of

proving that the clause should not be enforced.  *Provident Mut. Life Ins. Co. of Philadelphia v.*

*Bickerstaff*, 818 F. Supp. 116, 118 (E.D. Pa. 1993).

      In the second part of the Step One analysis, courts consider both public and private

interests in transferring the matter.  Private interests include both the plaintiff's and the

defendant's forum preferences, whether the claim arose elsewhere, the convenience of the parties

"as indicated by their relative physical and financial condition," the convenience of the witnesses

(to the extent that it bears on their availability for trial), and the location of books and

records.  *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-80 (3d Cir. 1995).  Public interest

factors that may be considered include "the enforceability of the judgment, practical

considerations that could make the trial easy, expeditious, or inexpensive, the relative

administrative difficulty in the two fora resulting from court congestion, the local interest in

deciding local controversies at home, the public policies of the fora, and the familiarity of the

trial judge with the applicable state law in diversity cases." *Id.*  In assessing the public and

private interests where a valid forum selection clause exists, courts must adhere to three

principles in their analysis: (1) "the plaintiff's choice of forum merits no weight;" (2) the parties'

private interests weigh entirely in favor of transfer to the preselected forum; and (3) "a § 1404(a)

transfer of venue will not carry with it the original venue's choice-of-law rules." *Atl. Marine*

*Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 63-64 (2013).

      Step Two requires courts to assess the private interests of the non-contracting parties and

the public interests involved, using the same factors listed above.  "If . . . the Step One and Step

Two analyses point to the same forum, then the court should allow the case to proceed in that

forum, whether by transfer or by retaining jurisdiction over the entire case, and the transfer

inquiry ends there." *Howmedica*, 867 F.3d at 404.

However, if Steps One and Two point to different fora, courts proceed to the next step.

*Id.* If there is only one venue that the court can choose that would remedy any jurisdictional or

procedural defects, Step Three requires that the court sever the case accordingly. *Id.* If more

than one outcome could solve the resulting constraints, the court must proceed to Step Four,

which requires the court to use its discretion in choosing the course of action that would avoid

duplicative litigation, promote efficiency interests, and mitigate prejudice to the non-contracting

parties. *Id.*

## II.    DISCUSSION

Defendants move to transfer this action to the United States District Court for the District

of Nebraska in Omaha. Plaintiff opposes transfer. Under Step One, we assess whether

Defendant AUCRA can enforce the forum selection clause against Plaintiff. Plaintiff failed to

show that enforcing the parties' valid forum selection clause would be in violation of a strong

public policy in Pennsylvania. In analyzing Step One's second inquiry (which also concerns

public interests), the private and public interests weigh in favor of trying the case in Nebraska.

Since the forum selection clause is valid and Pennsylvania's interest in resolving its own issues

of administrative law is minor and does not outweigh the private interests at issue, Step One

supports transferring the matter to Nebraska.

Step Two considers both the private interests of the non-contracting Defendants and the

public interest, and those interests support transferring the claims to Nebraska as well. Since

Steps One and Two both support transfer to Nebraska, Defendants' Motion will be granted.

Moreover, because the Motion will be granted, Defendants' motion to dismiss Counts I through

V on the merits need not be reached.  *See Rosenzweig v. Brunswick Corp.*, No. CIV.A. 08-807 (SDW), 2008 WL 3895485, at *10 (D.N.J. Aug. 20, 2008) (declining to address the merits of the parties' motions following transfer or dismissal of all claims pursuant to a valid forum selection clause and Rule 19(b)).[2]

### A.      Step One

The forum selection clause binds only Plaintiff and AUCRA.[3]  Step One first considers whether the forum selection clause is valid.  Plaintiff argues that the forum selection clause is not enforceable because Defendants' failure to seek administrative approval of the RPA renders its forum selection clause void and contrary to public policy.

#### 1.    *Enforceability of the Forum Selection Clause*

In the first part of Step One, this Court must assess whether AUCRA's failure to file the RPA with the Commissioner renders it—and its forum selection clause—void.  Forum selection clauses are "prima facie valid" and are enforced unless "unreasonable under the circumstances."  *M/S Bremen,* 407 U.S. at 9-10.  Courts hold that "[a] contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in

---

[2] The RPA has a Nebraska choice-of-law provision for substantive issues.  "Applying federal law to questions of enforceability of forum selection clauses comports with settled law in this Circuit."  *Collins On behalf of herself v. Mary Kay, Inc.*, 874 F.3d 176, 181 (3d Cir. 2017).  Moreover, both parties extensively cite federal law in their briefing.  Because neither party asserts anything other than that federal law applies, we will analyze their arguments under federal law.  *See In re McGraw-Hill Global Education Holdings LLC*, 909 F.3d 48, 58 (3d Cir. 2018) (analyzing forum selection clause under federal law where parties cited only federal case law in their briefings); *John Wyeth & Brother Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1074 (3d Cir. 1997).

[3] Defendants do not dispute Plaintiff's assertion that only Plaintiff and AUCRA are bound by the forum selection clause.  Therefore, Plaintiff cannot be forced to bring its case against AUCRA's co-defendants in Nebraska unless some other rule requires it.  *See Dayhoff, Inc. v. H.J.Heinz Co.*, 86 F.3d 1287, 1293-97 (3d Cir. 1996).

which suit is brought, whether declared by statute or by judicial decision." *Id.* at 15.  Since Plaintiff opposes enforcement of the forum selection clause, it bears the heavy burden of proving that the clause should not be enforced.  *Bickerstaff,* 818 F. Supp. at 118.

Courts have refused to find a forum selection clause in violation of public policy where the objecting party failed to meet its burden to show that the clause is unenforceable under the forum's law.  *See Cadapult Graphic Sys., Inc. v. Tektronix, Inc.*, 98 F. Supp. 2d 560, 566–67 (D.N.J. 2000).  "Where a forum selection clause does not directly undermine a state's public policy, courts require the objecting party to demonstrate that the relief available under the law of the forum specified would be insufficient."  *Sahara Sam's Oasis, LLC v. Adams Companies, Inc.*, No. 10-0881, 2010 WL 3199886, at *3 (D.N.J. Aug. 12, 2010).  In addition, it is consistent with Pennsylvania's public policy to give effect to the parties' forum selection clause.  *Maaco Franchising, Inc. v. Tainter*, No. 12-5500, 2013 WL 2475566, at *4 (E.D. Pa. June 10, 2013); *see Susquehanna Patriot Com. Leasing Co. v. Holper Indus., Inc.*, 928 A.2d 278, 283 (Pa. Super. 2007).

Here, Plaintiff asserts that enforcing the forum selection cause would violate a strong public policy of protecting workers and employers because the RPA, which contains the forum selection clause, was not filed with or approved by the Pennsylvania Insurance Commissioner. Plaintiff contends that the failure to file the RPA renders it—and the forum selection clause— void.  For the reasons set forth below, Plaintiff has failed to establish that AUCRA's failure to file the RPA before the Commissioner renders the contract (and its forum selection clause) void as a matter of public policy.

Plaintiff asserts that the failure to file the RPA renders it and its forum selection clause void ab initio.  Plaintiff relies on 40 Pa. Stat. and Cons. Stat. Ann. § 813, which states that no

insurance policy or contract "shall be issued except upon a form approved by the Insurance

Commissioner as complying with all the terms and provisions of this act."  Plaintiff also cites 40

Pa. Stat. and Cons. Stat. Ann. § 814, which states:

> A complete copy of every policy or a true copy of the substantive provisions of any
> policy or contract of insurance against such liability under such acts, and a true
> copy of every endorsement upon any such policy *and of every agreement pertaining*
> *thereto*, shall be filed with the rating bureau or bureaus aforesaid within a
> reasonable time after the effective date of any such policy, endorsement, contract,
> or agreement.

(emphasis added).  Rating bureaus are "subject to supervision and to examination by the

Insurance Commissioner."  *Id.*  Finally, Plaintiff cites several California cases that held that any

agreement altering the terms of an approved workers' compensation insurance contract is

unenforceable if not filed in accordance with state law.  Plaintiff concludes that the failure to file

the RPA, which was an agreement pertaining to the original insurance contract, renders it—and

the forum selection clause—void.

While it appears that the RPA should have been filed with the Pennsylvania Insurance

Commissioner, Plaintiff cites no Pennsylvania case—nor could we find one—that states that

failure to file the contract renders it void.  The California cases that Plaintiff relies upon do not

bind us with regard to interpreting Pennsylvania's administrative laws.  We do not make any

ruling on what Pennsylvania law requires, only that Plaintiffs have provided us with insufficient

support for the proposition that failure to file a workers' compensation insurance policy before

the Pennsylvania Insurance Commissioner, as a matter of law, renders the contract void.[4]

---

[4] One of Defendants' counterarguments is that Plaintiff failed to exhaust its
administrative remedies by failing to litigate the instant matter before the Pennsylvania Insurance
Commissioner.  We must address that argument because it is relevant to the Court's subject
matter jurisdiction.

Under Pennsylvania law, where there is an administrative remedy dictated by statute, "the
directions of the statute shall be strictly pursued."  1 Pa. Cons. Stat. Ann. § 1504.  If a party fails
exhaust its administrative requirements, "the court is without power to act."  *Martel v. Allegheny*

Because there is an insufficient basis for us to find that Pennsylvania administrative law requires that we void the contract pursuant to its regulations, we turn to Plaintiff's public policy argument.  Plaintiff asserts that the forum selection clause is void because the parties' deviation from the statutory scheme contradicts Pennsylvania's public policy, furthered by administrative regulations, of keeping workers insured as well as employers solvent and protected from predatory schemes.  Pennsylvania regulates insurance "[t]o protect policyholders and the public against the adverse effect of excessive, inadequate or unfairly discriminatory rates."  77 Pa. Cons. Stat. and Stat. Ann. § 1035.1(1).  But there is no reason why a federal court in Nebraska could not adjudicate the claims in  a way that would vindicate those policy interests.  *See Campanini v. Studsvik, Inc.*, No. 08-5910, 2009 WL 926975, at *5 (E.D. Pa. Apr. 6, 2009)

---

*Cty.*, 216 A.3d 1165, 1172 (Pa. Commw. Ct. 2019).  However, "a court may exercise jurisdiction where the administrative remedy is inadequate."  *Feingold v. Bell of Pennsylvania*, 383 A.2d 791, 793 (Pa. 1977).

Insurance rates in Pennsylvania are regulated by various administrative agencies, including the Pennsylvania Insurance Commissioner.  After reviewing the law governing the Commissioner's powers, we do not find any evidence that the Commissioner has the authority to adjudicate the claims raised in this case.  *See* 77 Pa. Stat. and Cons. Stat. Ann. §§ 1035.  Plaintiff could not have raised its unjust enrichment, recission, common law fraud, negligent representation, and UTPCPL claims before the Commissioner.  The Commissioner's authority is confined to adjudicating application or misapplication of rates, as well as statutory claims that give her authority over them.  *Id.* § 1035.17 ("The commissioner shall review the application and . . . conduct a hearing held on not less than ten (10) days' written notice to the applicant and to the rating organization or insurer."); *Jones v. Nationwide Prop. & Cas. Ins. Co.*, 995 A.2d 1233, 1236 (Pa. Super. 2010), *aff'd on other grounds*, 32 A.3d 1261 (Pa. 2011) (observing that the Commissioner's additional powers to investigate, adjudicate, and order remedies for violations of Pennsylvania's Unfair Insurance Practices Act were explicitly legislatively delegated).  Defendants have offered no authority, and we are aware of none, showing that the Commissioner would have been empowered to order appropriate relief.  Defendant only highlights that Plaintiff could have sought "monetary relief in the form of a refund for amounts overcharged."  (Def.'s Reply, 7, ECF No. 10) (citing *McDuffie v. Stewart Title Guar. Co.*, 897 F. Supp. 2d 294, 297 n.2, 299 (E.D. Pa. 2009)).  But that is not the only relief Plaintiff seeks; it also seeks "punitive damages, interest, costs, attorney's fees and such other relief as the Court deems appropriate."  (Am. Compl. at ¶ 110.)  Because the administrative remedy is inadequate to address the claims raised and damages sought, Plaintiff was not required to file its claims before the Commissioner, and we may hear its claims.  *Feingold*, 383 A.2d at 793.

(observing that federal courts outside of our Circuit can apply Pennsylvania workers' compensation laws); *see also Sahara Sam's Oasis*, 2010 WL 3199886, at *4 (finding there was no public policy violation where plaintiffs could not demonstrate that the proposed forum's law would provide insufficient protections to consumers within the court's jurisdiction); *compare with Lewis v. Nat'l Bd. of Osteopathic Med. Examiners, Inc.*, No. 20-4368, 2020 WL 7260747, at *7 (E.D. Pa. Dec. 10, 2020) (noting that there is a strong federal public policy of enforcing civil rights laws, but that a forum selection clause would only be invalidated on that basis if enforcing the clause frustrated the purpose of the law).  Pennsylvania's general interest in protecting its workers' compensation policy holders would not be harmed by transferring the matter to Nebraska.  Moreover, giving effect to the parties' forum selection clause is consistent with Pennsylvania's public policy. *Susquehanna Patriot*, 928 A.2d at 283.  Thus, there is no public policy reason that merits voiding the forum selection clause signed by AUCRA and Plaintiff.[5]

### 2. *Public and Private Interests of Contracting Parties*

The second part of Step One involves assessing both the public interests at play, as well as the private interests of the contracting parties.  The Third Circuit has compiled a list of factors that bear on motions to transfer venue, which fall into two categories: private interests and public interests. *Jumara,* 55 F.3d at 879; *see Howmedica*, 867 F.3d at 408.  Private interests include: (1) both the plaintiff's and defendant's forum preferences; (2) whether the claim arose elsewhere; (3) the convenience of the parties "as indicated by their relative physical and financial condition;" (4) the convenience of the witnesses, but only to the extent that it bears on their

---

[5] Plaintiff also suggests that deviation from the statutory scheme is itself a violation of public policy, in part because Plaintiff asserts that the unfiled RPA "was an intentional sidestep of the Pennsylvania regulatory process."  (Pl.'s Mem. of Law, 13.)  Plaintiff's assertion that Defendants *intentionally* circumvented Pennsylvania administrative laws is, at this point, speculative.

availability for trial; and (5) the location of books and records. *Id.* (citations omitted). Public interests include: (1) the enforceability of the judgment; (2) practical considerations making trial easy, expeditious, or inexpensive; (3) the relative court congestion of the two fora; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) in diversity cases, the familiarity of the trial judge with applicable state law. *Id.* at 879-80. Not all factors will apply in a given case, and the court may address other considerations if pertinent. The statute demands an "individualized, case-by-case consideration of convenience and fairness." *Van Dusen v. Barrack,* 376 U.S. 612, 622 (1964). However, where a valid forum selection clause binds the signing parties, as it does here, all private factors weigh in favor of transferring the matter to the pre-selected forum. *Atl. Marine*, 571 U.S. at 64.

With regard to the public interest factors, Plaintiff asserts that (1) the relative court congestion here is less than in the District of Nebraska and (2) Pennsylvania has a strong interest in deciding issues involving its administration of workers' compensation insurance policies. Neither of these factors require the case to be tried in Pennsylvania.

First, the relative court congestion in the fora favors transfer to the District of Nebraska. Pennsylvania's median time from filing to disposition of civil matters is 6.6 months. United States District Courts – National Judicial Caseload Profile (December 31, 2021), https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_ distprofile1231.2021.pdf. Nebraska's median time is 5.0 months. *Id.* Since the District of Nebraska resolves cases faster on average than our District, the relative court congestion weighs in favor of transfer.

Second, Plaintiff asserts that Pennsylvania has a strong interest in deciding issues related to its workers' compensation scheme. Plaintiff has raised novel, collateral issues of

Pennsylvania administrative law, one Pennsylvania statutory cause of action, and several common law causes of action to be decided by Nebraska law (pursuant to the choice of law provision).  While Pennsylvania has an interest in deciding its own administrative law issues, Nebraska also has an interest in deciding its own common law causes of action.  Importantly, the District of Nebraska can apply Pennsylvania law to decide any Pennsylvania administrative questions of law that arise.  *See Campanini*, 2009 WL 926975, at *5.  Plaintiff has not met its burden of showing that the public interests involved outweigh the private interests, which weigh entirely in favor of transferring the matter to Nebraska.

Since the forum selection clause is enforceable and no public interest factors strongly weigh in favor of trying the matter in Pennsylvania, Step One supports transferring the matter to the District of Nebraska.

**B.    Step Two**

Step Two requires courts to examine the effect of transfer on both the public interest and the private interests of non-contracting parties.  Because Plaintiff's previous suit against Defendants shows that it would not be inconvenient to try the case in Nebraska, AUCRA's non-contracting co-defendants—Applied, Continental, and ARS—will be transferred to the District of Nebraska as well.

As discussed above, the public interests involved in this matter do not weigh in favor of trying the case in Pennsylvania.  With regard to private interests, Plaintiff notes that Pennsylvania would be a convenient forum for Defendants, who conducted business in Pennsylvania; the claims arose in Pennsylvania; and Pennsylvania is a convenient location for its witnesses and documents.  These interests are marginal at best.  Defendants have offices in Nebraska and request that we transfer it there.  Moreover, Plaintiff originally filed suit in the

13

District of Nebraska, voluntarily dismissed the matter, and then filed suit here.  This is compelling evidence that there is no meaningful inconvenience for Plaintiff to try the case there.  Thus, the balance of public and private interests weighs in favor of transferring the matter to Nebraska.

Because the Steps One and Two both support transferring the matter to the District of Nebraska, the last two steps need not be reached.  *Howmedica*, 867 F.3d at 404.[6]  Defendant's Motion to transfer is granted;  Plaintiff's claims against all of the Defendants will be transferred to the District of Nebraska.

---

[6] Even if the first two steps pointed in opposite directions, Steps Three and Four would require trying Defendants together in Nebraska.  Step Three concerns threshold issues related to severance.  Rule 19 outlines a two-step analysis for determining whether a party is indispensable.  Under Rule 19(a), the Court determines whether an absent party is "necessary" to the dispute by assessing whether the party is required for the court to accord complete relief, its absence would impair the Court's ability to protect its interests, or its absence would "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."  Fed. R. Civ. P. 19(a)(1).  If the absent party is necessary, and joinder would not deprive the court of subject matter jurisdiction (e.g., destroy diversity), then the Court must next determine whether joinder of the absent party is feasible under Rule 19(b).  *See Janney*, 11 F.3d at 404.  A valid forum selection clause will result in joinder not being feasible.  *Rosenzweig*, 2008 WL 3895485, at *9.

Another case involving Applied as a defendant is instructive here.  In *Milmar Food Grp. II, LLC v. Applied Underwriters, Inc.*, 85 N.Y.S.3d 347 (N.Y. Sup. Ct. 2018), the plaintiff sued Applied, AUCRA, ARS of New York, Continental, and two other companies regarding its insurance agreement.  The defendants moved to transfer the matter pursuant to the RPA's forum selection clause.  *Id.* at 362.  The *Milmar* court granted the motion to transfer and further determined that AUCRA was a necessary party pursuant to N.Y. C.P.L.R. 3211 (a)(10), which is analogous to Rule 19.  In so ruling, the Court observed that Nebraska courts could provide an adequate remedy and that "[w]hile this Court arguably has the authority to stay the instant proceedings while Milmar is pursuing its claims against AUCRA in Nebraska, it appears that a stay in the circumstances here present would only lead to unnecessary delay and duplication of proceedings."  *Id*.  As in *Milmar*, AUCRA is central to all of Plaintiff's claims, and severing AUCRA from its co-defendants would result in two identical trials proceeding in different jurisdictions.  Step Three would weigh in favor of transfer.

For the reasons above, Step Four—which concerns avoiding duplicative litigation, promoting efficiency interests, and mitigating prejudice to the non-contracting parties—would also weigh in favor of transfer to the District of Nebraska.

**IV.     CONCLUSION**

For the foregoing reasons, Defendants' Motion to Transfer Venue or Alternatively Dismiss the First Amended Complaint is granted in part.  Plaintiff's claims against all of the Defendants will be transferred to the District of Nebraska.  An appropriate Order follows.


**BY THE COURT:**


*/s/ R. Barclay Surrick*
**R. BARCLAY SURRICK, J.**